Claude FLOOD, Petitioner–Appellant,

v.

Thomas PHILLIPS, Respondent–Appellee.

No. 01–2249.

United States Court of Appeals, Sixth Circuit.

Jan. 30, 2004.

110

Timothy M. Holloway, Taylor, MI, for Petitioner–Appellant.

William C. Campbell, Office of the Attorney General, Lansing, MI, for Respondent–Appellee.

Before BOGGS, Chief Judge; KRUPANSKY and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Petitioner Claude Flood was convicted by a jury in Michigan state court on various charges of criminal sexual conduct and extortion in violation of Michigan Compiled Laws §§ 750.520d(1)(b), 750.520e(1)(a) and 750.213. Petitioner appeals from the district court's judgment denying his petition for a writ of habeas corpus, pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## BACKGROUND

Petitioner's habeas petition, as well as his appeal, relates to his Michigan state court conviction, following a jury trial, of six counts of third-degree criminal sexual conduct, MICH. COMP. LAWS ("M.C.L.") § 750.520d(1)(b); six counts of fourth-degree criminal sexual conduct, M.C.L. § 750.520e(1)(a), and nine counts of extortion, M.C.L. § 750.213. On July 20, 1993, Petitioner was sentenced to concurrent sentences of six to fifteen years for the third-degree criminal sexual conduct, one to two years for the fourth-degree criminal sexual conduct, and thirteen to twenty years for extortion. He raises in his federal habeas petition the following arguments: (1) testimony about two videotapes of Petitioner's sexual acts with his wife was improperly admitted at trial; (2) a therapist's notes containing out-of-court statements made by the alleged victim were improperly admitted at trial; (3) Petitioner was denied ineffective assistance of counsel; and (4) the prosecutor's closing remarks were extremely prejudicial and warrant a reversal of Petitioner's conviction.

Petitioner was convicted of third and fourth degree criminal sexual conduct and extortion stemming from the molestation of his daughter, Mashell Flood. Mashell was 26 years old at the time of the state court trial. Petitioner's first wife—Mashell's mother—died of cervical cancer when Mashell was ten. Petitioner remarried to Barbara Flood when Mashell was 13 years old. Mashell continued to live at home until she turned 18, at which time she left home to attend Michigan State University. She spent one summer living at home and then lived on her own. Mashell testified that Petitioner molested her when she was seven years old, and again from ages fourteen through nineteen. (Mashell had no recollection of molestation

from ages eight to thirteen). According to Mashell's testimony, Petitioner, while naked, had rubbed lotion over Mashell's naked body when she was seven years old, showed Mashell pictures of female genitalia in Playboy magazine, and rubbed the lotion on his own naked body in Mashell's presence. Mashell also recalled an occasion when she was fourteen when Petitioner penetrated her vagina digitally, performed oral sex on her, and masturbated to ejaculation in her presence.

Mashell alleged that between the ages of fourteen and eighteen. Petitioner and Mashell would, at Petitioner's direction, massage each other's naked bodies with Vaseline lotion. This allegedly occurred during almost every instance of molestation. Sometimes Petitioner required Mashell to masturbate him to ejaculation, and he used Kleenex to wipe himself afterward; sometimes Petitioner required Mashell to digitally penetrate his anus or penetrate with pencils or soda bottles; other times Petitioner would penetrate his own anus in Mashell's presence. The sex acts allegedly recurred intermittently. According to Mashell. Petitioner frequently walked around the house naked, danced naked, masturbated, and sometimes watched himself naked on a camcorder in the family room. He also allegedly had video-recorded himself and Mashell engaging in oral sex and massages, and made still pictures of the videotape.

At age sixteen, Mashell began to avoid being alone with Petitioner, but he threatened to show the videotape to others if she did not acquiesce in his sexual demands. Mashell states that she acquiesced. Mashell testified that although she knew where the videotape was, it never occurred to her to take it. She also denied having seen videotapes of Petitioner and his wife Barbara engaging in sexual acts. The sex acts finally stopped when Mashell returned to college for her sophomore year. Mashell testified that she disclosed the sexual abuse to her sophomore year roommate. Mashell also testified that she told her former neighbor, Mary Ann McLean, about the molestation. Mashell further testified that she sought counseling from Sheila Vander, a social worker at Wayne County Catholic Social Services. Mashell approached the Michigan State Police and disclosed the abuse to Trooper Tom Cremonte. She also told Trooper Cremonte about the videotape, which she thought was kept in a crawl space under the house.

Neighbor Mary McLean testified as a character witness on Mashell's behalf stating Mashell had disclosed Petitioner's abuse to her and told her about the videotape. Mashell's sophomore year roommate, Patty Parker, testified that Mashell had left a note on Patty's desk, disclosing Petitioner's sexual abuse of her but adding that she did not want to talk about the abuse. Social worker therapist Sheila Vander also testified that she began treating Mashell on April 1, 1992 and that she was still in treatment at the time of trial. The trial court admitted Vander's therapist notes, which contained various out-of-court statements made by Mashell.

Trooper Cremonte testified that Mashell met with him and disclosed the abuse. Specific details concerned use of a comforter, Kleenex, Vaseline lotion, cunnilingus, and masturbation, including masturbation episodes in Petitioner's car, the videotapes, and the still pictures. Trooper Cremonte testified that a search warrant was issued for the videotapes on December 5, 1991. The police knocked on the door; when no one answered, the police entered the house through the garage and seized 1,000 photographs and 21 videotapes. The items described by Mashell were not among the photographs or videotapes; however, Cremonte did find two videotapes of Petitioner

and his wife engaged in sexual activity. One of the videotapes was made in the family room and showed a comforter laid on the family room floor and a pump bottle of Vaseline Intensive Care Lotion and Kleenex on the quilt. Cremonte described to the jury in explicit detail the various sex acts engaged in by Petitioner and his wife on the videotape.

The jury returned guilty verdicts against Petitioner as follows: six counts of third-degree criminal sexual conduct, six counts of fourth-degree criminal sexual conduct, and nine counts of extortion. Following his conviction. Petitioner filed a direct appeal to the Michigan Court of Appeals, arguing error with respect to: (1) the admission of testimony about videotaped sexual relations between Petitioner and his wife (on state law grounds); (2) a social worker's notes about out-of-court statements made by Mashell (on state law grounds); and (3) prosecution's statements about Petitioner's "homosexual" tendencies and a possibility of Petitioner having molested his son (on state and federal law grounds). The Michigan Court of Appeals denied Petitioner's appeal and affirmed his convictions. *See People v. Flood*, No. 166837 (Mich.Ct.App. Mar. 14, 1995) (*per curiam*) (unpublished). Petitioner filed leave for appeal to the Michigan Supreme Court, which also was denied on December 27, 1995. *See People v. Flood*, 450 Mich. 958, 548 N.W.2d 630 (Table) (Mich. Dec. 27, 1995) (unpublished).

On December 27, 1996, Petitioner filed a motion requesting relief from his conviction, pursuant to Michigan Court Rule ("MCR") 6.500. The state trial court de-

nied Petitioner's MCR 6.500 motion, reasoning in part that four of the issues had previously been raised and decided against Petitioner, precluding him from raising them in a 6.500 motion. The court reasoned that Petitioner's "claims of ineffective assistance of trial counsel and the admission of evidence" were not raised "in his prior appeal, nor has he demonstrated good cause for the failure to do so. Therefore, [Petitioner] is not entitled to relief on this basis. MCR 6.508(D)(3)."[1] (J.A. at 89–90). The Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal from the state trial court's order, based on Petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *See People v. Flood*, 460 Mich. 864, 598 N.W.2d 342 (Table) (June 29, 1999); *People v. Flood*, No. 211392 (Mich.Ct.App. Oct. 16, 1998) (unpublished).

On July 1, 1999, Petitioner filed a timely petition for a writ of habeas corpus in United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 2254. The habeas petition raised the only fully-exhausted claim (i.e., one claim raised on direct appeal, the prosecutor's closing argument reference to Petitioner's possible homosexual tendencies), as well as the ten grounds asserted in his 6.500 motion. The state filed an answer on May 19, 2000, asserting that Petitioner's habeas petition should be dismissed for failure to state his claims adequately, and that the petition's claims, in any event, lacked merit. Petitioner filed a reply on

---

1. MCR 6.508(D)(3) provides that in post-appeal proceedings challenging criminal convictions, a "court may not grant relief to the defendant if the motion ... alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates (a) good cause for failure to raise such grounds on appeal or in the prior motion, and (b) actual prejudice from the alleged irregularities that support the claim for relief." MCR 6.508(D)(3).

July 28, 2000 and requested an evidentiary hearing.

The case was subsequently referred to Magistrate Judge Paul J. Komives, who issued a Report and Recommendation stating that some of Petitioner's claims appeared to have been procedurally defaulted, but recommended against dismissing those claims on that basis, given that the state had waived its right to assert the procedural default affirmative defense. The Report and Recommendation urged that Petitioner's habeas petition be dismissed on its merits. Petitioner filed timely objections to the Report and Recommendation. Significantly, the state did not file any such objections. On July 31, 2001, the district court entered an order that overruled Petitioner's objections, accepted the magistrate judge's findings, and denied the Petitioner's writ of habeas corpus. Simultaneous with denial of the petition for writ of habeas corpus, the district court denied Petitioner a certificate of appealability, reasoning Petitioner had not made "a substantial showing of the denial of a constitutional right." (J.A. at 58). Petitioner filed a timely notice of appeal and we granted a certificate of appealability for the four issues Petitioner raises in his federal habeas petition.

## DISCUSSION

### A.

■ We first address the threshold issue of whether the district court erred in denying Petitioner's habeas petition because it reasoned that Petitioner did not satisfy the formal requirement for submitting a habeas petition and even if he did his claims had been procedurally defaulted. The district court's rejection of Petitioner's federal habeas petition pursuant to the Rules Governing Section 2254 Proceedings and its application of procedural default principles are reviewed *de novo*. *Wickline v. Mitchell,* 319 F.3d 813, 818 (6th Cir. 2003) (" 'Whether a state court rested its holding on procedural default so as to bar federal habeas review is a question of law,' reviewed de novo.") (quoting *Combs v. Coyle,* 205 F.3d 269, 275 (6th Cir.2000)).

Rule 2(c) of the Rules Governing Section 2254 Proceedings ("Rule 2(c)") sets forth the formal procedure for filing a habeas petition before a district court. Rule 2(c) requires a habeas petition to "specify all the grounds for relief which are available to the petitioner and of which he has or by the exercise of reasonable diligence should have knowledge" and "set forth in summary form the facts supporting each of the grounds thus specified." 28 U.S.C. § 2254, Rules Governing Section 2254 Proceedings, Rule 2(c). We believe that the habeas petition should not have been dismissed based on Rule 2(c) because Petitioner complied with this rule.

Although the state does not seem to pursue this argument on appeal, the state suggested to the district court that Petitioner's habeas petition was deficient for failure to comply with Rule 2(c). A habeas petition must allege that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Rule 2(c) only requires that the petition "shall specify all the grounds for relief which are available to the petitioner and of which he has or by the exercise of reasonable diligence should have knowledge" and that the petition "set forth in summary form the facts supporting each of the grounds thus specified." 28 U.S.C. § 2254, Rules Governing Section 2254 Proceedings, Rule 2(c); *see also Lonberger v. Marshall,* 808 F.2d 1169, 1173 (6th Cir.1987) (discussing sufficient legal basis for habeas petition); *Franklin v. Rose,* 765 F.2d 82, 85 (6th Cir.1985). We think Petitioner's bare-bones habeas peti-

tion met these requirements. *See O'Neal v. McAninch*, 513 U.S. 432, 444–45, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); *Jones v. Jerrison*, 20 F.3d 849, 853 (8th Cir.1994) (*en banc*); *cf. Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (reasoning the petitioner's habeas petition failed to allege sufficient facts to satisfy "cause and prejudice" standard).

■ We now turn to the state's argument that some of Petitioner's claims were procedurally defaulted and should therefore be dismissed despite our granting Petitioner a certificate of appealability with respect to those claims. It appears that most of Petitioner's federal constitutional claims were not advanced on direct appeal in state court. Additionally, Petitioner acknowledged in his habeas petition that the Michigan state courts had not decided the constitutional aspects of his claims on the merits. The state, however, did not plead procedural default as an affirmative defense in either state or federal court and it failed to object to the magistrate's Report and Recommendation. Nevertheless, the state argues that Petitioner's defaulted claims should be dismissed for procedural default. The state insists that it did not waive the defense, but we disagree. The state was required to assert procedural default as an affirmative defense in its responsive pleading. *See Trest v. Cain*, 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997). The state did not do so; it only asserted in its answer that Petitioner had "failed to demonstrate how his Sixth Amendment rights were violated" and "failed to demonstrate under the standard of [*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1986)] that, absent the alleged error, the finder of fact would have had a reasonable doubt as to Petitioner's guilt." (J.A. at 12). These assertions amount to an argument that the

habeas petition was too vague and is unrelated to procedural default.

■ The state also argues that it did not have to raise the affirmative defense because Petitioner had already admitted procedural default in his habeas petition, but again we disagree. The habeas petition stated that only one claim had been fully exhausted on direct appeal (relating to the prosecutor's "homosexual tendencies" comment), but it never expressly admitted procedural default. The state further argues that the district court was entitled to dismiss claims *sua sponte* for procedural default. This is an issue which the Supreme Court has not decided, although it has held that federal courts of appeal are not required to raise procedural default issues *sua sponte*. *See Trest*, 522 U.S. at 89. This Court, in fleetingly addressing the issue, has affirmed the *sua sponte* dismissal of 28 U.S.C. §§ 2254 and 2255 petitions for procedural default. *See Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir.2002) (§ 2254); *Elzy v. United States*, 205 F.3d 882, 886–87 (6th Cir.2000) (§ 2255).

We agree with the several of our sister circuits that appellate courts should not embrace *sua sponte* raising of procedural default issues as a matter of course. *See, e.g., Rosario v. United States*, 164 F.3d 729, 732–33 (2d Cir.1998) (noting that "appellate courts should not lightly raise the issue of ... procedural default *sua sponte*"). In this case, we believe it would be appropriate for us to consider Petitioner's procedurally defaulted claims given that the district court did not consider them and the state waived procedural default as an affirmative defense. Generally, we do not dismiss habeas claims on procedural default grounds without first giving the petitioner an opportunity to respond. *See Lorraine*, 291 F.3d at 426. And the magistrate judge's resolution of the issues

(by considering Petitioner's procedurally defaulted claims on the merits) did not present Petitioner with an opportunity to respond. The Michigan trial court denied Petitioner relief from his conviction, reasoning that his claims had failed to comply with MCR 6.508(D)(3), a state procedural rule that permits state appellate courts to grant discretionary relief to a defendant if the defendant demonstrates good cause for failing to raise the issues in a prior appeal. Because we agree with the district court that Petitioner failed to comply with state procedural rules except as to his claim of prosecutorial misconduct,[2] we believe Petitioner's claims are procedurally defaulted. *See Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir.2003) ("[A] procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a reasoned opinion in the case clearly and expressly states that its judgment rests on a state procedural bar"). We nevertheless may *sua sponte* consider Petitioner's procedurally defaulted claims on the merits because the state did not assert procedural default as an affirmative defense in its responsive pleadings and Petitioner was never heard on his claims. *See Lorraine*, 291 F.3d at 426.

**B.**

We dismiss on the merits Petitioner's defaulted claims relating to the videotape testimony and marital privacy; the Confrontation Clause claim; the prosecutor's comment on Petitioner's silence; and the ineffective assistance of trial counsel. Because Petitioner filed his federal habeas petition after AEDPA took effect, that statute's provisions govern this Court's re-view. *Moss v. Hofbauer*, 286 F.3d 851, 858 (6th Cir.2002). We review the district court's legal conclusions *de novo* and its factual findings for clear error. *Id.* Under AEDPA, habeas relief may not be granted with respect to any claim adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). We must presume that all determinations of factual issues made by the state court are correct unless the petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

A state court is considered to have unreasonably applied Supreme Court precedent when it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. The Supreme Court has made clear that in conducting a review under the unreasonable application prong, courts should inquire as to "whether the state court's application of clearly established federal law was objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). Although we review the state court's legal conclusion with the deference required by AEDPA, we are not bound by either a state court or the district court's conclusions regarding whether counsel was ineffective in the way that we are bound by a finding of fact, because the question is one of mixed law and fact and therefore is

---

**2.** Of course, the specific claim of prosecutorial misconduct relates to comments about Petitioner's possible homosexuality. This claim was non-defaulted because Michigan Court of Appeals specifically rejected this claim in its unpublished opinion. *See People v. Flood*, No. 166837 (Mich.Ct.App. Mar. 14, 1995) (*per curiam*) (unpublished).

subject to *de novo* review. *Carter v. Bell,* 218 F.3d 581, 591 (6th Cir.2000).

The Supreme Court has held that a procedurally defaulted claim may still prevail upon a showing of "cause and prejudice." *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (citing *Wainwright v. Sykes,* 433 U.S. 72, 87, 97, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). The "cause and prejudice" requirement for procedurally defaulted claims is "grounded in concerns of comity and federalism, . . . and applies alike whether the default in question occurred at trial, on appeal, or on state collateral attack." *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (citations omitted). Examples of cause include "a showing that the factual or legal basis for a claim was not reasonably available to counsel" and "[i]neffective assistance of counsel." *Id.* The Supreme Court has also made it clear that "[n]ot just any deficiency in counsel's performance will do, however, the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards,* 529 U.S. at 451.

As to the prejudice requirement, "the habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray,* 477 U.S. at 494 (emphasis in original). Alternatively, if a petitioner cannot establish cause and prejudice, he or she must "demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards,* 529 U.S. at 451 (internal citations omitted). On these facts, we cannot say Petitioner satisfied the "cause and prejudice" standard or suffered injustice because his habeas petition was denied. However, we will address the merits of

Petitioner's claims in spite of Petitioner's failure to satisfy the "cause and prejudice" requirement inasmuch as the state failed to object to Petitioner's procedural default of his claims.

■ We first address Petitioner's claim regarding confiscated videotapes. Petitioner challenges the admission of Trooper Cremonte's testimony about two confiscated videotapes showing Petitioner and his wife engaging in sexual acts. Petitioner argues that this testimony violated his due process rights to a fair trial and marital privacy. We believe that this argument lacks merit.

We agree with Petitioner that the Fourteenth Amendment of the Constitution guarantees United States citizens a due process right to marital privacy. Specifically, the Supreme Court has created a zone of privacy in a married couple's marital relations. *See Griswold v. Connecticut,* 381 U.S. 479, 482–85, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The Supreme Court has recognized that Petitioner enjoys privacy rights of "selective disclosure" and individual autonomy. *Whalen v. Roe,* 429 U.S. 589, 599–600 & n. 26, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). Petitioner's right "is neither absolute nor unqualified, and may be outweighed by a legitimate governmental interest." *Renn v. Garrison,* 100 F.3d 344, 349 (4th Cir.1996) (internal citations omitted). Thus, even assuming that Petitioner's interest extends to the introduction of testimony about his videotapes at trial, the state's interest in combating child molestation overrides Petitioner's privacy interest.

■ Petitioner also argues that the videotape testimony, which the trial court determined was relevant to show Petitioner's sexual pattern or habit, was not sufficiently relevant and was highly prejudicial inasmuch as it was introduced to show that Petitioner was some sort of sexual deviant.

While we tend to agree with Petitioner that the videotapes' probative value may have been outweighed by its prejudicial effect, this is a state law argument that was reviewed and rejected by the Michigan Court of Appeals. This Court has no authority to reverse the Michigan Court of Appeals' ruling as to state law issues, unless a denial of fundamental fairness would ensue. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988). No fundamental unfairness appears on this record.

■ Next, we address Petitioner's claim that the state trial court should not have admitted social worker Sheila Vander's notes into evidence, because the notes contained hearsay statements, made by Mashell, the admission of which violated Petitioner's Confrontation Clause rights. Though Mashell's statements as recorded in the therapist notes were hearsay, the trial court admitted the notes under one of the exceptions to the hearsay rule, to wit, "Records of Regularly Conducted Activity," or the business records exception. Michigan does not exclude such evidence under its rules. *See* MICH. R. EVID. 803(6). Admission of a hearsay statement satisfies the Confrontation Clause if the hearsay statements "bear [ ] adequate 'indicia of reliability.'" *Idaho v. Wright*, 497 U.S. 805, 815, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). A showing of "adequate 'indicia of reliability'" can be satisfied if "the hearsay statement 'falls within a firmly rooted hearsay exception,' or where [the hearsay statement] is supported by 'a showing of particularized guarantees of trustworthiness.'" *Id.* at 816. In this case, Vander's notes were admitted under the business records exception, which this Court has held is an acceptable hearsay exception for Confrontation Clause purposes. *United States v. Waters*, 158 F.3d 933, 940–41 (6th Cir.1998).

Petitioner nevertheless insists that the business records hearsay exception does not apply here because the declarant (Mashell) had made the statement for the purposes of litigation. Yet Petitioner provides no persuasive authority for his position. The issue is not Mashell's intent in making the statements: the issue is whether Vander's notes, in recording Mashell's statements, are reliable. Under the Confrontation Clause analysis set forth by the Supreme Court, the notes were *per se* reliable because they fall under a firmly rooted exception; the notes therefore were admissible. The analysis need not also determine that the notes were trustworthy under the circumstances, as Petitioner would like this Court to do. *Wright*, 497 U.S. at 816. The business records exception has been held to be a firmly rooted exception, and Petitioner has not persuaded us that it should not apply in the circumstances. Therefore, Petitioner's Confrontation Clause claim lacks merit.

■ We now turn to Petitioner's ineffective assistance of counsel claim. To establish an ineffective assistance of counsel claim, Petitioner must show that (1) defense counsel's performance was deficient; and (2) Petitioner was prejudiced by defense counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first prong of the *Strickland* test requires Petitioner to show that counsel's performance fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Counsel's performance must be afforded deference. *Id.* Further, we must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Petitioner claims that defense counsel gave him bad advice about whether he

should testify at trial. Specifically, Petitioner refers to a favorable medical malpractice lawsuit settlement he received when his first wife died in 1977. The settlement provided Mashell with $600 monthly from ages 18 to 23, and a $140,000 lump sum at age 23. Petitioner received a $750,000 annuity, with Mashell as beneficiary. Mashell spent all of her money within a short time after receiving it, supposedly purchasing cutlery for herself so that she could be the top regional salesperson for her employer and get promoted to a management position. Petitioner claims that Mashell asked him and Barbara for money, and when they refused, she brought criminal charges, apparently in the hope of receiving the $750,000 annuity if Petitioner went to prison and committed suicide, which Petitioner suggested he would do if he were ever imprisoned. Petitioner claims that defense counsel advised him not to testify because the state would have been able to bring to the jury's attention Petitioner's prior conviction for disorderly conduct, as a result of having exposed himself to a neighbor. Petitioner argues that this advice was deficient because, given that the crime of conviction did not involve "dishonesty or a false statement," impeachment pursuant to Michigan Rule of Evidence 609(a)(1) would have been improper.

We think that this argument lacks merit. It is true that the Sixth Amendment requires defense counsel to provide a criminal defendant with adequate advice and consultation about his or her Fifth Amendment right to testify. Michigan Rule of Evidence 404(b) allows the admission of "other-crimes" evidence, for any of the following purposes: "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contem-

poraneous with, or prior or subsequent to the conduct at issue in the case." MICH. R. EVID. 404(b)(1). Given the evidence presented at trial about Petitioner's proclivity for walking around the house nude and exposing himself to Mashell, the prosecutor could have tried to use the prior conviction against Petitioner had he testified. It appears that the prosecutor and defense counsel agreed that the prosecutor would not present evidence of the prior conviction if Petitioner did not testify. Defense counsel may have felt that keeping the prior conviction from the jury was worth keeping Petitioner off the witness stand. Moreover, defense counsel may have had other strategic motives for advising Petitioner not to testify. Finally, we think Petitioner cannot show that his decision not to testify "worked to [Petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (emphasis in the original). Petitioner claims that there was a reasonable probability that the outcome would have been different, but that is not sufficient to satisfy the prejudice burden with respect to a defaulted claim. We therefore reject this claim.

■ Petitioner also takes issue with defense counsel's failure to object to the prosecutor's introduction of Mashell's out-of-court statements. Specifically, Petitioner points to the testimony of Paula Parker, Mary Ann McLean, and Officer Cremonte, all of whom testified about Mashell's disclosure of sexual abuse to them. The testimony evidently was admitted under recently amended Michigan Rule of Evidence 801(d)(1)(B), which permits admission of such evidence at trial. Petitioner argues that some courts of appeals interpreting the federal counterpart. Federal Rule of Evidence 801(d)(1)(B), held, prior to Petitioner's trial, that in

order for a prior consistent statement to be admissible under F.R.E. § 801(d)(1)(B), the statement must have been made before the supposed motive to falsify arose. *See, e.g., United States v. White,* 11 F.3d 1446 (8th Cir.1993). On these facts, we cannot say that defense counsel's failure to object was constitutionally deficient.

■ Petitioner also argues that defense counsel should have objected because admission of Mashell's out-of-court statements violated the Confrontation Clause inasmuch as the statements were not sufficiently reliable. In this case, however, Michigan Rule of Evidence 801(d)(1)(B) has designated the statement to be nonhearsay, thus the Confrontation Clause does not apply. *See United States v. Young,* 105 F.3d 1, 11 (1st Cir.1997) (rejecting Confrontation Clause argument because the statement challenged on appeal was not hearsay pursuant to Federal Rule of Evidence 801(d)(1)(B)). Therefore, this argument lacks merit.

■ Petitioner's final defaulted argument concerns four statements made in the prosecutor's closing argument to the jury, which indirectly commented on Petitioner's decision not to take the witness stand. Specifically, the statements were as follows:

Now, in this analysis that you're going to have to conduct, you're going to have to also think about he [sic] defense case and what is the defense arguing in this particular case and what are they relying on in this particular case. And I can tell you right now—because the case is finished—the Defendant did not call witnesses and they are relying merely on their cross-examination of the prosecutor's witnesses. In other words, they're attacking—the only thing they're doing is attacking the credibility of the prosecutor's witnesses." (J.A. at 322.)

The law says [Petitioner] doesn't have to do anything, just sit there." (J.A. at 323.)

"Now, what you have to understand here is that myself and Mr. Sabotta [defense counsel] have different jobs. His job is to represent Claude Flood and defend him to the best of his ability. And you see what tactic the defense has taken in this case—cross examine the witnesses and then making their closing argument, making those points in closing argument." (J.A. at 324.)

Let me ask you this question. What evidence was presented here that proves Mash his lying? There is none." (*Id.*)

"Would you rely on a case that rests on cross-examination and argument? Obviously, I'm not going to put Mr. Sabotta's arguments on my exhibit for him to use. He could do the same thing. But it's typical of their case. Don't put any evidence on, but come in and tell you to find flaws in the prosecutor's case." (J.A. at 327.)

We agree with Petitioner that the prosecutor probably should not have made these remarks. Though the state tries to downplay them, prosecutors generally should not comment on a defendant's failure to testify, either directly or indirectly. *See, e.g., Byrd v. Collins,* 209 F.3d 486, 533 (6th Cir.2000). An indirect reference to a defendant's failure to testify is not *per se* reversible error. *Byrd,* 209 F.3d at 533. The prosecutor's remarks were indirect and, in this context, Petitioner's Fifth Amendment right was not violated by them.

■ Finally, we turn to Petitioner's only non-defaulted claim, which concerns comments the prosecutor made referring to Petitioner's alleged homosexual tendencies. The comment went as follows:

Why did the Defendant stop? That question, I can't answer. That question, I don't think the evidence answers. I can speculate. I can do the same thing that Mr. Sabbota [defense counsel] has done, as far as nobody else noticing Mashell. I could speculate—maybe switch to his son—about the right age; he's 13 now. He started on Mashell, as far as she remembered with the direct act, at age 13. That's speculation. I'm not going to ask you to go back there and say the prosecution has proven that he started on the other child.

. . . .

MR. KALYTIAK: Oh—and no homosexual tendencies. Well, I guess if you consider placing items in your rectum homosexual tendencies, then maybe there are homosexual tendencies there.

(J.A. at 328–29). We agree with Petitioner that the prosecutor's remarks about Mashell's brother, as well as the "homosexual tendencies" remark, were inappropriate. Nevertheless, the Supreme Court requires that a prosecutor's closing remarks not only be "undesirable or even universally condemned," but that they " 'so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 182, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). That was not the case here. The prosecutor conceded to the jury that his remarks were speculative and that he had no evidence, thereby mitigating their harmful effect. *See Byrd*, 209 F.3d at 536. Petitioner relies on *Washington v. Hofbauer*, 228 F.3d 689 (6th Cir. 2000) and argues that the prosecutor's remarks were a part of a wider scheme to cast Petitioner as a sexual deviant and to attack Petitioner's character. Yet *Hofbauer* offered a much more egregious case of prosecutorial misconduct because in that case the prosecutor hurled gratuitous insults at the petitioner and misrepresented the record during his closing argument. *Id.* at 700. Habeas relief for Petitioner on this claim is not warranted.

## CONCLUSION

For these foregoing reasons, we **AFFIRM** the judgment of the district court denying a writ of habeas corpus to Petitioner.