NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0565n.06

No. 10-3972

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 12, 2011*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,          )
                                   )
    Plaintiff-Appellee,         )
                                   )
v.                                 )   ON APPEAL FROM THE UNITED
                                   )   STATES DISTRICT COURT FOR THE
MICHAEL KOKOSKI,                   )   SOUTHERN DISTRICT OF OHIO
                                   )
    Defendant-Appellant.        )


Before: SUTTON and WHITE, Circuit Judges; STAFFORD, District Judge.[*]


SUTTON, Circuit Judge. Michael Kokoski appeals the district court's judgment revoking his supervised release and imposing a 34-month prison sentence. We affirm.


I.


In 1994, Kokoski pleaded guilty to one count of employing a minor to distribute LSD, and in 2000 he pleaded guilty to one count of escaping from a correctional institution. For these crimes, the district court sentenced him to a total of 181 months of imprisonment and 72 months of supervised release. Kokoski was released from prison and began his term of supervised release in June 2008. On March 9, 2010, the district court revoked his supervised release and sentenced Kokoski to two months in prison after he admitted committing various state crimes and using drugs.

_____

[*] The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

Less than a month after Kokoski began serving his second term of supervised release, his probation officer accused him of: (1) bringing an impostor (a friend purporting to be his attorney) to a drug-counseling session; (2) stating at a counseling session that he felt "as if [he] could get a gun and shoot [his probation officer] in the head"; (3) disrupting group counseling sessions; and (4) making "inappropriate comments" to staff at the drug-treatment facility, which, in combination with his erratic behavior, made female staff members there "very uncomfortable." SRVR II at ¶ 5–12.

The district court held a second supervised release revocation hearing, after which it found that Kokoski had failed to engage in the drug treatment required by his terms of release. The sentencing guidelines recommended a prison sentence in the range of 8–14 months, but the district court concluded that an above-guidelines sentence was "fully supported by Mr. Kokoski's history, his characteristics, and his behavior." R.58 at 53. On the government's recommendation, the court sentenced Kokoski to a term of 34 months, the statutory maximum.

## II.

### A.

Kokoski contends that the revocation hearing violated due process because the district court refused to allow him to cross-examine witnesses against him. Supervised release revocation proceedings, like their forerunners (parole revocation proceedings), are subject only to "minimum requirements of due process," which are less demanding than the procedural protections that normally accompany criminal trials. *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (parole

revocation); *United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir. 1997) (supervised release revocation). While these requirements generally include "the right to confront and cross-examine adverse witnesses," the hearing process should nonetheless be "flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489; *accord* Fed. R. Crim. P. 32.1(b)(2)(C). Neither the Confrontation Clause, *see United States v. Kirby*, 418 F.3d 621, 627 (6th Cir. 2005), nor the Federal Rules of Evidence, *see* Fed. R. Evid. 1101(d)(3), apply in supervised release revocation hearings, permitting the use of hearsay evidence as long as it is reliable, *United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998). We review reliability findings for abuse of discretion. *United States v. Whitely*, 356 F. App'x 839, 843 (6th Cir. 2009).

A number of factors go into the reliability inquiry. "Hearsay given under oath, replete with detail, or supported by corroborating evidence has been recognized as reliable. Conversely, out-of-court statements reflecting an adversarial relationship with the accused, or containing multiple layers of hearsay, have been recognized as unreliable." *United States v. Lloyd*, 566 F.3d 341, 345 (3d Cir. 2009); *see also United States v. Moncivais*, 492 F.3d 652, 658–59 (6th Cir. 2007) (finding hearsay reliable because it was "richly detailed" and "both internally and externally consistent"). The evidence presented at Kokoski's second revocation hearing satisfied this reliability requirement.

*Evaluations of Kokoski by Moster and Fischer*. Kokoski objected to the admission of the evaluations by Dr. Moster and Ms. Fischer, describing them as "the real meat of the violation." R.58 at 17. The district court reasonably concluded that both evaluations were reliable. Dr. Moster's

report is a discharge summary, a record kept in the ordinary course of business at the treatment center. *See* Fed. R. Evid. 803(6). Ms. Fischer's report consists of notes taken while treating a patient, which we have recognized may be admitted as a business record. *See Flood v. Phillips*, 90 F. App'x 108, 117 (6th Cir. 2004). There is no reason to doubt—and thus far no one has offered any reason to doubt—that the two reports here satisfy the requirements of business records. Because both evaluations fall within this "firmly rooted hearsay exception," their reliability "can be inferred without more." *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36, 67 (2004). The evaluations, moreover, are detailed accounts that corroborate each other and indeed have been corroborated by Kokoski himself. *See Crawford v. Jackson*, 323 F.3d 123, 130 (D.C. Cir. 2003) (hearsay is reliable and admissible at a revocation hearing when corroborated by the defendant's own statements). Kokoski's counsel acknowledged the truth of two of the allegations—that his client brought an impostor to counseling and had mused about shooting his probation officer. And the allegation that Kokoski was not meaningfully participating in drug treatment is confirmed by Kokoski's own admission that he does not "view [himself] as having a drug problem" and is "not interested in sobriety." R.37 at 2. Because Kokoski "does not specifically dispute the reliability of [these factual allegations] on appeal," we cannot say—indeed it would be exceedingly hard to say—that the district court abused its discretion in considering them. *United States v. Roark*, 403 F. App'x 1, 5 n.6 (6th Cir. 2010).

There is some question whether a district court's reliability finding must satisfy a procedural requirement as well, namely that the court expressly balance on the record the government's interest

in relying upon the hearsay—the Moster and Fischer reports—against Kokoski's interest in confrontation. *Compare United States v. Kelley*, 446 F.3d 688, 692 (7th Cir. 2006) (no explicit balancing required if hearsay is sufficiently reliable), *with Barnes v. Johnson*, 184 F.3d 451, 454 (5th Cir. 1999) (requiring "an explicit, specific finding of good cause" to permit the use of hearsay at a parole revocation hearing). Whether such a requirement exists and, if so, when it applies need not detain us. Even if trial courts must spell out on the record why the balancing inquiry came out the way it did, any such error was harmless here.

In the context of a supervised release revocation hearing, the erroneous admission of hearsay evidence is harmless unless it "affect[ed]" the defendant's "substantial rights," *United States v. Whitely*, 356 F. App'x 839, 843 (6th Cir. 2009), which is to say that it altered "the outcome of the district court proceedings," *United States v. Jackson*, ___ F. App'x ___, No. 10-4165, 2011 WL 1597665, at *3 (6th Cir. Apr. 28, 2011). The key factual allegations contained in the hearsay evidence—that Kokoski threatened his probation officer, brought an impostor to counseling sessions and was not interested in freeing himself from his drug problem—were not disputed at Kokoski's revocation hearing, and they are not disputed on appeal. *See Whitely*, 356 F. App'x at 844. All of this by definition establishes harmlessness—that admission of the two reports did not alter the outcome of the proceedings. *See United States v. Stanfield*, 360 F.3d 1346, 1360 (D.C. Cir. 2004) (Roberts, J.).

*Probation Officer Frommeyer's Report and Statements*. Nor did the district court err in relying upon the report prepared, and the in-court statements made, by Robert Frommeyer, the

supervising probation officer handling Kokoski's case. Because Kokoski did not object to the court's consideration of Frommeyer's report and statements, we review the district court's decision to consider them for plain error. Frommeyer appeared at the revocation hearing, giving Kokoski the opportunity to question him about the contents of his report. Kokoski chose not to do so, presumably because he did not contest the accuracy of the relevant portions of Frommeyer's report and statements. *See supra* at 4. On this record, the district court reasonably "could have concluded that [Frommeyer's report and statements] were fairly reliable, insofar as they were corroborated by . . . undisputed fact[s]," defeating any possibility of plain error. *Stanfield*, 360 F.3d at 1360.

*Notice*. Kokoski argues that the pleadings filed by the government failed to give him notice of the charges against him. He complains that the government charged him with failing to participate in drug treatment but then "unleashed" a battery of unrelated charges against him at the revocation hearing. Kokoski Br. at 16–17. Not true. The government presented the same factual allegations at the hearing that it included in its initial petition for revocation: bringing a friend with him to treatment, announcing his intention to kill his probation officer, making inappropriate comments to staff members and not seriously engaging in treatment. And the term of the agreement he violated—failing to participate in a drug-treatment program—is the same one the government raised in its petition. Kokoski had notice of the charges against him.

B.

Kokoski argues that insufficient evidence supported the supervised-release violation. We disagree. The court acknowledged that Kokoski was physically present at treatment sessions but found that he did not take treatment seriously, that he engaged in disruptive and threatening behavior at treatment sessions, and that he had no sincere desire to end his drug addiction. The record amply supports these findings, permitting the court to conclude that Kokoski did not meaningfully participate in the treatment program.

C.

Kokoski argues that the psychotherapist–patient privilege protected statements he made to a counselor while receiving drug treatment and should not have been considered. The issue here is not whether the privilege—protecting "confidential communications made to licensed psychiatrists and psychologists"—applies. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). It is whether Kokoski waived the privilege. A patient may waive the psychotherapist–patient privilege by knowingly and voluntarily relinquishing it, such as by disclosing the substance of therapy sessions to unrelated third parties. *United States v. Hayes*, 227 F.3d 578, 586 (6th Cir. 2000).

Kokoski waived the privilege, first, by signing a waiver form authorizing the release of confidential information to the probation office. The form notified Kokoski that the information disclosed could include the "type, frequency, and effectiveness of therapy (including psychotherapy notes)." R.48 Ex. A. Kokoski argues that the waiver should be set aside because he had no choice

but to sign it as a condition of his supervised release, creating a "classic Catch 22 scenario" in which Kokoski had to attend counseling but could not share his personal thoughts without running the risk that they would be used against him at a revocation hearing. Kokoski Br. at 25. Whatever the merits of that claim as a matter of policy, the government was well within its rights to demand that Kokoski surrender certain rights and privileges as a condition of supervised release, including the psychotherapist–patient privilege. *Cf. Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). Kokoski at any rate waived the privilege in another way—by disclosing the substance of his therapy sessions. He included a copy of Dr. Moster's report in his motion for sanctions.

## D.

Kokoski claims that his sentence was procedurally unreasonable because the court failed to consider the guidelines or justify its imposition of an above-guidelines sentence. Since Kokoski did not object to the sentencing procedure below, despite being given an opportunity to do so, we review this claim for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2007) (en banc). The district court committed no procedural error, let alone a plain one. It considered the § 3553 sentencing factors and guidelines range, properly treated the guidelines as advisory and considered both parties' arguments before clearly explaining its rationale for the sentence imposed.

## E.

Kokoski separately claims that his 34-month prison sentence was substantively unreasonable, a claim we review "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552

U.S. 38, 41 (2007). When a district court imposes a sentence outside the guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance," since "a major departure should be supported by a more significant justification than a minor one." *Id.* at 50.

No doubt, this sentence was well above the guidelines range—20 months over the 14-month high end of the range. But that does not make it excessive or an abuse of discretion. The court justified the variance based on Kokoski's extensive criminal history (including multiple supervised release violations in a three-month span), his lack of interest in receiving treatment and his statements about shooting his probation officer—all legitimate grounds for this variance. *See United States v. Woodward*, 638 F.3d 506, 510 (6th Cir. 2011) (extensive criminal history); *United States v. Branch*, 405 F. App'x 967, 969–70 (6th Cir. 2010) (repeated violations of terms of supervised release); *United States v. Kontrol*, 554 F.3d 1089, 1092–93 (6th Cir. 2009) (threatening remarks to probation officer). No reversible error occurred.

III.

For these reasons, we affirm.

**WHITE, J.**, dissenting. Because Kokoski was deprived of his right to cross-examine adverse witnesses at the revocation hearing, in violation of due process, and the error was not harmless, I respectfully dissent.

The Government called no witnesses at the revocation hearing. Only Frommeyer, Kokoski's probation officer's supervising officer who had signed the Petition for Warrant and Supervised Release Violation Report, spoke, without having been sworn to tell the truth.

Kokoski's counsel objected, stating "Your Honor, we would like to cross-examine the evidence in some format. The government's called no witnesses. I anticipated that they would put on some type of evidence to substantiate the violation." R. 58 at 62. Kokoski's counsel also objected to the district court relying on counselor Fischer's and Dr. Moster's reports, which were attached to Frommeyer's Supervised Release Violation Report.

The Government conceded at argument that Frommeyer had no first-hand knowledge of the contents of his report, which included the statement that "It is the opinion of Kokoski's group treatment counselor [Melissa Fischer] that Kokoski was not engaged in treatment and his behavior was disruptive to the group process." Yet, as discussed below, counselor Fischer's group therapy notes state no such opinions.

Given Kokoski's objection to not being able to cross-examine adverse witnesses, the district court was obligated to balance Kokoski's right to cross-examine counselor Fischer and

psychologist Moster against the Government's reasons for denying it, and to determine whether

the Government established good cause for failing to have them appear. *See* Fed. R. Crim. P.

32.1, Advisory Committee Notes to the 2002 Amendments:

> Rule 32.1(b)(2)(C) address[es] the ability of a releasee to question adverse witnesses at the . . . revocation hearing. [That] provision[] recognize[s] that the court should apply a balancing test at the hearing itself when considering the releasee's asserted right to cross-examine adverse witnesses. The court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it. *See, e.g., Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999); *United States v. Walker*, 117 F.3d 417 (9th Cir. 1997); *United States v. Zentgraf*, 20 F.3d 906 (8th Cir. 1994).

*See also United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998) (noting that under Rule 32.1

"the trial court may consider reliable out-of-court statements in a final revocation hearing

provided that the defendant's need for confrontation is outweighed by the government's ground

for not requiring confrontation").[1]  Here, the district court made no such inquiry of the

---

[1]Am Jur, Pardon & Parole § 149, states:

> A parolee must be afforded the opportunity for an effective rebuttal of the allegations presented. Although a formal hearing and formalized cross-examination are not necessary, on the request of the parolee, a person who has given adverse information on which parole revocation is to be based must be made available for questioning in the parolee's presence. The parole board may not circumvent this requirement by declining to offer the witness's live testimony and relying instead on summaries of what the witness would testify to if called. Rather, only if the hearing examiner finds good cause for not producing the witness . . . can the government be excused from proffering the best evidence.

*See also* Neil P. Cohen, *The Law of Probation and Parole* (2d ed.), § 26.24 at 26-57:

Government, and the Government showed no cause, good or otherwise, for failing to present any witnesses.

The majority concludes that 1) Kokoski did not object to the court's consideration of Frommeyer's report and statements, and 2) that Kokoski had the opportunity to question Frommeyer about the contents of his report but "chose not to do so, presumably because he did not contest the accuracy of the relevant portions of Frommeyer's report and statements." I disagree with both determinations. Defense counsel stated at the revocation hearing that Kokoski denied Frommeyer's allegation that he had violated his supervised release, and counsel's objection to the Government's failure to present witnesses included that the Government had presented no evidence *substantiating* Frommeyer's report and statements. Thus, I cannot agree with the majority that Kokoski failed to object to Frommeyer's report and statements standing alone, and chose not to question Frommeyer "presumably because he did not contest the accuracy of" Frommeyer's report and statements. Because Frommeyer had no first-hand knowledge of any of the contents of his report, questioning him would have yielded only repetition of the very conclusion Kokoski sought to challenge by examining the source of the information.

---

The record of the final revocation hearing should . . . include the reason for any denial of the rights of confrontation . . . *Morrissey* provides for a right of confrontation unless the decisionmaker "specifically finds" good cause to disallow it. . . .

- 12 -

The majority concludes regarding counselor Melissa Fischer and psychologist Moster's writings, which were attached to Frommeyer's Violation Report, that 1) the district court "reasonably concluded that both evaluations were reliable," 2) there is no reason to doubt that the two reports satisfy the requirements of the business-records exception to the hearsay rule, and 3) because both reports fall within this "firmly rooted hearsay exception" their reliability can be inferred without more.

The district court made no such determinations on the record – it did not address the reliability of the counselors' reports and it did not address whether it could properly consider them under any hearsay exception, rather, the court stated that the "Rules of Evidence do not apply to supervised violation hearings and the Court may rely on hearsay. I am within my authority to rely on what Mr. Frommeyer has reported this afternoon. It seems to me then the burden shifts to the Defendant . . . to present evidence or arguments that would negate the report and the contents of the report." R. 58 at 22-23.

In *Waters*, 158 F.3d at 940-41, an appeal from a supervised-release revocation, the defendant challenged the Magistrate's reliance on hearsay evidence as insufficiently reliable. This court noted that documents *properly admitted* under the firmly-rooted business-records exception do not violate the Confrontation clause:

> As the Magistrate Judge observed, both exhibits contain notations stating that they are true copies of hotel records kept in the ordinary course of business. Such

records are generally considered reliable enough to overcome exclusion from evidence on hearsay grounds, *see* Fed. R. Evid. 803(6) . . . . Under the circumstances, we hold that the Magistrate Judge acted within his discretion in considering the hotel records without requiring the government to call the custodians to testify.

Frommeyer, the only person who spoke at the revocation hearing, did not state that either of the therapists' writings were kept in the regular course of business. Neither of the reports so states, either.

Most importantly, Fischer's report does not support the central statement in Frommeyer's Supervised Release Violation Report, that "It is the opinion of Kokoski's group treatment counselor [Melissa Fischer] that Kokoski was not engaged in treatment, and his behavior was disruptive to the group process." Fischer's report stated in its entirety:

> Michael was discussing his probation requirements and expressed his anger about his lack of freedom. He stated, "sometimes I get so mad I feel as if I could get a gun and shoot Tom Barbeau." [a margin edit initialed MF said "in the head"] Other group members chuckled in response thinking that the comment was not serious, and [Kokoski] stated, "No I am serious, I could do that." Counselor expressed concern, and explained to [Kokoski] that he cannot leave until it is clear that he has no intent to harm Tom or anyone else. At this point [Kokoski] stated, "Oh I would not hurt Tom. I have no intention of that. I am just angry about my situation. I do not own a gun." Just after that statement, Michael followed with, ". . . but I could go get one if I got angry enough." Counselor again expressed concern, and client stated, "Oh I am not serious honey, I did not mean for you to take it so personally." To which counselor replied, "I am doing my job which is to make sure everyone is safe, and I am not convinced that you (client) are safe to leave here and will not be a threat to anyone's safety." Client again stated that he would not harm anyone or himself and counselor had him sign a statement that he

would not harm Tom Barbeau. Michael understood that his probation officer (Tom Barbeau) would be notified. After client left, Tom [PO Barbeau] was notified by Lisa Schneider via email of the situation.

[signed, Melissa Fischer, MA, PCCR 4/7/10]

4/8/10

9:20 a.m.        Counselor spoke directly with Tom Barbeau and relayed all information about interaction with Michael Kowkowski [*sic*]. Counselor shared clinical impressions that client was making contradictory statements the day before (4/7/10) in order to test boundaries and attempt to manipulate counselor; however, that counselor took precautions such as a written contract and notifying Tom of incident.

[signed Melissa Fischer, MA PCCR 4/8/10]

In sum, counselor Fischer's report opined neither that Kokoski was not engaged in treatment nor that Kokoski's behavior was disruptive to the group process.

I also largely disagree with the majority's determination that, in any event, Fischer's and Moster's evaluations "are detailed accounts that corroborate each other and indeed have been corroborated by Kokoski himself." There is no indication that Dr. Moster ever met with or observed Kokoski in therapy or had any first-hand knowledge of the behaviors she reported in her discharge summary. Most importantly, however, is that Dr. Moster's discharge summary draws its own conclusions regarding Kokoski's expressing violent thoughts in group therapy regarding probation officer Barbeau, conclusions which differ greatly from counselor Fischer's. Counselor Fischer, who indisputably led the April 7 group therapy session, stated in her counseling notes

her clinical impression that Kokoski's back and forth remarks regarding PO Barbeau were him

"making contradictory statements . . . in order to test boundaries and attempt to manipulate

counselor [Fischer herself]."  As defense counsel repeatedly argued at the revocation hearing,

Fischer's clinical impression that Kokoski was testing her boundaries and attempting to

manipulate her was *contradicted by* Dr. Moster's discharge summary's clinical impressions,

which stated, inter alia, that:

> In reviewing progress notes and statements from staff members regarding his  time at IKRON, it is my determination that he posed an imminent risk to safety of other persons, moved from general expression of frustration with probation requirements to specific and deadly threat toward his probation officer whom he deemed responsible.  He did not make a vague, ill-defined threat but rather a clear and specific threat including reasons for the threat, a plan that was within his range of possibility, and a designated individual.  His words indicate that his anger is at a level of homicidal ideation and plan, and could escalate to action. . . .

Nor did Kokoski corroborate Dr. Moster's clinical impression.  Kokoski's counsel corroborated

only that Kokoski made statements in one group therapy session led by counselor Fischer that

sometimes he got so angry that he would like to shoot P.O. Barbeau, and that Kokoski took a

friend from the residential re-entry center at which he was residing with him to his first therapy

session, whom he introduced as his attorney.  Kokoski in no way corroborated that he was not

meaningfully participating in drug treatment, he adamantly maintained at the revocation hearing

that he had participated in treatment, and had thus not violated his supervised release.[2]

In *United States v. Whitely*, 356 F. App'x 839, 842 (6th Cir. 2009) (unpublished), this

court concluded that the district court's reliance on unsworn testimony of the probation officer

was error:

> The flexible evidentiary standard that applies to revocation proceedings allows
> consideration of evidence that would be inadmissible in a criminal prosecution,
> *United States v. Kirby*, 418 F.3d 621, 628 (6th Cir. 2005)[3], including letters,
> affidavits, and other documents, *Morrissey*, 408 U.S. at 489 [], as well as hearsay
> that bears indicia of reliability, *United States v. Stephenson*, 928 F.2d 728, 732
> (6th Cir. 1991). But despite these relaxed standards, "defendants are entitled to
> minimal due process requirements, including the right to confront and cross
> examine adverse witnesses." *United States v. Torrez*, No. 96-1973, 1997 WL
> 745520, at *2 (6th Cir. Nov. 24, 1997); see also Fed. R. Crim. P. 32.1(b)(2)(C)
> (providing accused the right to question adverse witnesses at supervised release

---

[2]The majority cites a *pro se* filing of Kokoski's to support that Kokoski admitted that he was not interested in sobriety and did not view himself as having a drug problem, but the district court had struck all of his *pro se* filings, its order stating that it did so because Kokoski was "ably represented" by Federal Defender Maus, Maus did not co-sign or authorize the *pro se* filings, and that "a review of the pro se pleadings reveals that each of them suffers from the same infirmity, i.e., lack of formal legal education that might have given Defendant a thorough understanding of the context in which his legal snippets arise. This Court concludes that each of the pro se motions should be stricken from the docket." R. 44, order entered 7/22/10.

[3]In *Kirby*, 418 F.3d at 627, this court held that the district court did not err in relying solely on the probation officer's (sworn) testimony to establish that the defendant had committed crimes while on supervised release where the probation officer's "testimony reflects that he engaged in an independent and thorough investigation of allegations that Kirby had committed crimes while on supervised release," that is, the sworn PO "personally reviewed surveillance tapes from businesses at which Kirby had passed stolen checks during five separate incidents. Based on his personal review of the videotapes, he identified Kirby as the individual passing the stolen checks."

revocation hearing). Despite these limited protections, we can assume, without deciding, that the district court's consideration of the unsworn probation officer's statements violated Whitely's rights and constituted an obvious error. We conclude, however, that any error was harmless because it did not affect Whitely's substantial rights.

[] To decide the prejudice issue here we examine whether the record – without the probation officer's statements – independently supports the court's findings and withstands a sufficiency challenge. We conclude that it does, and therefore find no prejudice to Whitely from this error.

During the pendency of this appeal, this court issued *United States v. Jackson*, 2011 WL 1597665 (6th Cir. Apr. 28, 2011) (unpublished), which relied on *Whitely*. As in *Whitely*, the defendant in *Jackson* did not object below. As in *Whitely*, the court in *Jackson* assumed that consideration of the probation officer's unsworn statement and failure to offer Jackson the opportunity to cross-examine the officer were error. The court concluded that the error did not affect Jackson's substantial rights because he admitted three of the alleged violations and the district court found that those three violations alone constituted a violation that required revocation, noting "With or without the officer's statement, the court was required to revoke Jackson's supervised release."

In the instant case, unlike in *Whitely* and *Jackson*, Kokoski objected to his inability to cross-examine adverse witnesses. Kokoski did not admit that he violated his supervised release; rather, he maintained that he participated in treatment. An examination of the record without Frommeyer's report and statements, i.e., counselor Fischer's and Dr. Moster's reports, does not support the district court's finding that Kokoski failed to participate in treatment. Dr. Moster was

not present when Kokoski made the statements at issue during a group therapy session, and from all indications had no first-hand knowledge of any of the contents of her report. Counselor Fischer, the only one who had first-hand knowledge of Kokoski's behavior and statements, opined that Kokoski was testing her boundaries and attempting to manipulate her by expressing his thoughts about his probation officer, not, as Frommeyer's Supervised Release Violation Report stated, that Fischer opined "that Kokoski was not engaged in treatment, and his behavior was disruptive to the group process."

Assuming, as the majority concludes, that counselor Fischer's report was reliable hearsay, Fischer's report did not support Frommeyer's allegation that Kokoski failed to participate in treatment and thereby violated his supervised release.

Under these circumstances, the district court's finding of a supervised-release violation and its imposition of a sentence well above the Guidelines range, in the face of its denial of Kokoski's right to cross-examine adverse witnesses, was not harmless error.